CHICAGO DISTRICT COUNCIL OF CAR-
PENTERS PENSION FUND, Chicago
District Council of Carpenters Welfare
Fund, and Chicago and Northeast Illi-
nois District Council of Carpenters Ap-
prentice and Trainee Program Funds,
Plaintiffs,

v.

SCIORTINO CONTRACTORS, INC.
d/b/a S.C.I. Construction Co.,
Inc., Defendant.

No. 94 C 3608.

United States District Court,
N.D. Illinois,
Eastern Division.

July 3, 1996.

Judith Ann Nash, Hugh J. McCarthy &
Associates, Ltd., Chicago, IL, Joseph Patrick
Berglund, Niew & Associates, Hinsdale, IL,
Terrance Bryan McGann, Daniel Paul
McAnally, Janet Lynn Adams, Mary Eliza-
beth Halloran, Whitfield & Gregorio, Chica-
go, IL, for plaintiffs.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On August 17, 1994, the Court ordered the defendant, S.C.I. Construction, Inc. ("SCI") to produce its books and records so that the plaintiffs, various union pension and benefit funds [1] (the "Trust Funds"), could conduct an audit to determine if SCI owed any unpaid contributions. The audit established a delinquency of $11.46.[2] The Trust Funds seek to

---

1. The plaintiffs are the Chicago District Council of Carpenters Pension Fund, Chicago District Council of Carpenters Welfare Fund, and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Funds.

2. SCI does not seem to contest this amount. It says only that the audit did not clearly explain the auditor's findings, and that "even auditors make mistakes." I therefore do not consider SCI to dispute the amount of the delinquency.

recover the delinquency, along with interest, liquidated damages, audit fees, and attorney's fees. For the reasons stated below, their motion is granted, but for a slightly reduced amount.

### The Agreements

In 1994, SCI employed a union carpenter under the terms of a Collective Bargaining Agreement (CBA) between SCI and the carpenters union. Among other things, the CBA bound SCI to make fringe benefit fund contributions for union employees, as outlined by Trust Agreements for each of the Trust Funds. Together, the CBA and Trust Agreements give SCI the duty to contribute to the Trust Funds and entitle the Trust Funds "to examine and copy such books, records, papers, and reports of the employer as may be necessary to determine [the] number of employees, hours of work performed, place of performance, and other information pertinent to a determination of the proper amount of [the] employer's contribution." If SCI falls behind in making payments to the Trust Funds or refuses to provide them with necessary books and records, the CBA provides that "[SCI] shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages." SCI does not dispute its obligation to provide its books and records for the Trust Funds.

### SCI's Actions

By not providing its books and records and ignoring court orders, SCI delayed the audit for two years.[3] This delay imposed needless costs of time and money on the plaintiffs and on this Court. For example, SCI scheduled and then backed out of three separate meetings with the auditors. On June 2, 1994, the Trust Funds filed suit in this Court seeking unpaid contributions, liquidated damages, interest, audit fees, and attorney's fees. When SCI failed to answer the complaint, this Court held SCI in default. At the proveup hearing on August 17, 1994, this Court entered a default order against SCI, ordering SCI to submit to an audit within 30 days. To force SCI to comply with the audit, this Court had to compel the appearance of its President, Salvatore Sciortino, with a body attachment on February 28, 1995, and with the threat of a body attachment on June 21, 1995. SCI also failed to appear in court, or appeared without all the required documents on seven separate occasions.[4] The audit was finally completed in March 1996, and SCI was found to have been delinquent in its contribution to the Trust Funds.

### ERISA Standard

The Trust Funds seek recovery of the delinquent amount, interest, liquidated damages, audit fees, and attorney's fees under both the contract and Section 502 of ERISA, 29 U.S.C. § 1132(g)(2). In actions brought by pension plans against employers for delinquent contributions, ERISA provides that when "a judgment in favor of the plan is awarded," the court shall award: (A) the unpaid contributions, (B) interest, (C) liquidated damages (or additional interest, if greater), (D) reasonable attorney's fees and costs, and (E) any other appropriate relief. 29 U.S.C. § 1132(g)(2). This award is mandatory. See Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547, 108 S.Ct. 830, 834–35, 98 L.Ed.2d 936 (1988) ("The special remedy against employers who are delinquent in meeting their contractual obligations that is created by § 502(g)(2) includes a mandatory award of . . . attorney's fees and costs."); Plumbers' Pension Fund v. Domas Mechanical Contractors, Inc., 778 F.2d 1266, 1271 (7th Cir.1985) (stating that the award of reasonable attorney's fees is "nondiscretionary").

---

3. In response to this motion, SCI attempts to excuse its delay by saying that its records were in the possession of an attorney regarding unrelated litigation, and therefore unavailable. SCI, however, has no excuse for its failure to appear in court to explain its situation or the extent of the delay.

4. SCI failed to appear on October 10 and December 21 of 1994 and January 19, January 26, March 2, April 21, and May 23 of 1995.

■ The Trust Funds correctly note that two other courts in this district have found that when the court orders the defendant to turn over its books and records, the court has entered a "judgment in favor of the plan." *See Masonry Institute v. Grove Construction, Inc.,* No. 93 C 2754, 1994 WL 148681, at *2, 1994 U.S.Dist. LEXIS 5058, at *10 (N.D.Ill. April 13, 1994) (Williams, J.); *Iron Workers Mid–America Pension Fund v. Imperial Glass Structures, Inc.,* No. 92 C 6380, 1993 WL 372203, at *2, 1993 U.S.Dist. LEXIS 13097, at *5 (N.D.Ill. September 15, 1993) (Kocoras, J.). Here, not only did I order SCI to turn over its books and records, but I am entering judgment in favor of the Trust Funds for the delinquent contributions owed.[5] Under either definition of "judgment in favor of the plan," the Trust Funds have been successful, making mandatory the award of interest, liquidated damages, and attorney's fees.[6]

## Amounts Owed

■ The audit showed a delinquency of $11.46. The CBA, Trust Agreements, and ERISA allow for interest and liquidated damages for delinquencies, which here equal $2.07 and $1.15, respectively. The two agreements and ERISA also allow the Trust Funds to collect their attorney's fees. Finally, the Trust Agreements allow the Trust Funds to recoup their auditor's fees, if a delinquency is found. The Trust Funds bear the burden of proving that the attorney's and auditor's fees they request are reasonable. *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 437, 103 S.Ct. 1933, 1939–40, 1941, 76 L.Ed.2d 40 (1983).

Based on the auditor's affidavit provided, I find that the audit fees are reasonable in light of the piecemeal fashion in which SCI's documents arrived. I therefore award the full amount requested, $1449.90.

Based on the affidavit provided by the Trust Funds' counsel, I find the attorney's fees are generally reasonable, with two exceptions. On twelve of fourteen court appearances by attorney Mary Elizabeth Halloran, she billed one hour. While attorneys do often have to wait in court, status hearings usually take much less than one hour. Moreover, the Trust Funds often have more than one case being called for a status hearing on a particular day. Of course, if Ms. Halloran appears for more than one case on a given day, the travel time and time spent waiting should be divided among all cases being called that day. I therefore reduce the time charged for these court appearances by 25% to 45 minutes, reducing the total award by $330.00. Also, I am striking $137.50 for the 1.1 hours spent by "law clerk" Dave McAnally in court, because a law clerk is not allowed to represent a party in court. I therefore award the Trust Funds a total of $6,158.25 for their attorney's fees.

■ SCI argues that such a large amount of audit and attorney's fees should not be awarded in light of the small delinquency.[7] The reason why the amount appears so unreasonable, however, is that SCI refused to cooperate with the Trust Funds, adhere to court orders, or appear in court to defend itself.

## Conclusion

The defendant, SCI, is hereby ordered to pay the plaintiff Trust Funds $7,622.91. This

---

**5.** Even if I were not formally entering judgment in favor of the Trust Funds for the delinquency, I would still find the award of attorney's fees mandatory, because there were unpaid contributions owed to the Trust Funds at the time the suit was filed. *See Chicago District Council of Carpenters Pension Fund v. Industrial Erectors, Inc.,* 840 F.Supp. 1248, 1253–54 (N.D.Ill.1993) (awarding attorney's fees even though the contributions were paid prior to judgment) (citing *Gilles v. Burton Construction Co.,* 736 F.2d 1142 (7th Cir. 1984)).

**6.** SCI argues that this Court should look to 29 U.S.C. § 1132(g)(1) which provides attorney's fees only at my discretion. The text of

§ 1132(g)(1), however, exempts its own application if the provisions of § 1132(g)(2) apply. In this case, there is clearly a "judgment in favor of the plan," making § 1132(g)(2) the applicable section.

**7.** SCI argues that the Trust Funds should have known from the beginning that any delinquency found was likely to be small, and that the amount of fees spent by Trust Funds to pursue such a small delinquency was unreasonable. This argument fails because: 1) ERISA does not exempt small delinquencies, and 2) the size of a delinquency is usually not known until the audit is completed.

amount represents $11.46 for the unpaid delinquency, $2.07 for interest, $1.15 in liquidated damages, $1,449.90 in audit fees, and $6,158.25 in attorney's fees and costs.